UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRESCENCIANO GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>THE WINE GROUP, INC. and THE WINE GROUP, LLC.,<br><br>Defendants. | No. 1:19-cv-01222-DAD-JDP<br><br>ORDER DENYING MOTION TO REMAND<br><br>(Doc. No. 5) |

This matter is before the court on plaintiff Crescenciano Garcia's motion to remand this action to Fresno County Superior Court. (Doc. No. 5.) On November 5, 2019, that motion came before the court for hearing.[1] Attorney Michael Brooks appeared telephonically on behalf of plaintiff, and attorney Keahn Morris appeared telephonically on behalf of defendants the Wine Group, Inc. and the Wine Group, LLC (collectively, "defendants"). Having considered the parties' briefing and having heard from counsel, and for the reasons that follow, plaintiff's motion will be denied.

---

[1] The undersigned apologizes for the delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district has reached crisis proportion. (*See* Doc. No. 10.) Unfortunately, that situation sometimes results in a submitted matter being overlooked for a period of time and that occurred with respect to this motion.

1

# BACKGROUND

Plaintiff's complaint alleges the following. Defendants are joint employers of plaintiff and own the Franzia Winery located in or near Sanger, California. (Doc. No. 1, Ex. A ("Compl.") at ¶ 1, 14, 15.) Plaintiff began working at Franzia Winery in August 2005 and continued to be employed there on a primarily seasonal basis until he was fired effective August 25, 2017. (*Id.* at ¶¶ 1, 2.)

Throughout the approximately 12 years that plaintiff worked at the winery, he was routinely laid off and then recalled back to work depending on the production needs of the company. (*Id.* at ¶ 3.) Plaintiff was laid off on or about June 16, 2017, and he was called back to work and required to submit to a "pre-employment" drug screening on or about August 23, 2017. (*Id.* at ¶¶ 4, 5.) Plaintiff's drug screen showed that he tested positive for methadone, and plaintiff admitted to the person performing the screening that he had recently used methadone on the advice of his doctor for the purpose of pain management. (*Id.* at ¶¶ 6, 7.) Plaintiff was fired on August 25, 2017 due to his testing positive for use of methadone. (*Id.* at ¶ 8.) On or about August 29, 2017, plaintiff's union filed a grievance regarding his termination. (*Id.* at ¶ 9.) While that grievance was pending, defendants were provided with a written correspondence from plaintiff's long-term treating physician explaining that he had advised plaintiff to try methadone as a possible alternative to continued use of Norco for control of his chronic pain. (*Id.* at ¶ 10.) On September 7, 2017, without any substantive discussion with plaintiff regarding the doctor's note or the underlying physical disability associated with his chronic pain, defendants summarily re-affirmed the decision to fire him for failing to pass the August 23, 2017 drug test. (*Id.* at ¶ 11.)

Plaintiff filed his complaint against defendants in Fresno County Superior Court on July 19, 2019. In his complaint plaintiff asserts claims for: (1) disability discrimination; (2) failure to accommodate disability; (3) failure to engage in good faith interactive process; (4) violation of right to privacy: intrusion into private affairs; and (5) wrongful discharge in violation of public policy. (*See* Compl.) On September 4, 2019, defendants removed this action to this federal court on the grounds of federal question jurisdiction, arguing that plaintiff's claims are preempted under § 301 of the Labor Management Rights Act ("LMRA"), 28 U.S.C. § 185. (Doc. No. 1 at

¶ 11.) On October 2, 2019, plaintiff filed the pending motion to remand asserting that none of his claims are preempted. (Doc. No. 5.) Defendants filed an opposition on October 22, 2019, and plaintiff filed his reply thereto on October 29, 2019. (Doc. Nos. 6, 7.)

**LEGAL STANDARD**

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, defendants assert that this court has federal question jurisdiction, meaning this action "aris[es] under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1441 *et seq.* These removal statutes are to be strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions*, 599 F.3d at 1106–07; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992). The district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").

/////

/////

3

# ANALYSIS

## A. Preemption under Section 301 of the LMRA

Defendants assert that adjudication of plaintiff's claims requires interpretation of the terms of the collective bargaining agreement ("CBA") between Franzia Winery and plaintiff's union,[2] and thus plaintiff's claims are preempted by § 301 of the LMRA. (Doc. No. 1 at ¶ 11.) Plaintiff moves to remand, arguing that none of his claims are preempted. (Doc. No. 5.) In opposition to plaintiff's motion to reman, defendants argue that despite plaintiff's "artful pleading," the operative complaint is a series of breach of contract claims that all rely upon and require interpretation of multiple provisions of the CBA. (Doc. No. 6 at 2.) The central question to be answered in order to resolve the pending motion is whether, as defendants argues, plaintiff's claims are preempted by federal law. Discussion of the relevant legal framework with respect to that issue is therefore necessary.

In the specific context of preemption under § 301 of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Section 301 "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Id.* at 1151 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). As the Ninth Circuit has explained,

/////

---

[2] Plaintiff requests that the court take judicial notice of the collective bargaining agreement (CBA). (Doc. No. 5 at 4 n.2; *see also* Doc. No. 1-2, Ex. 1.) Defendants do not oppose that request. Plaintiff was subject to a CBA at all relevant times. (Doc. No. 5 at 4.) The court "may take judicial notice of a CBA in evaluating a motion to dismiss . . . [as] such documents properly are considered . . . materials 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Jones v. AT & T*, No. 07-cv-3888-JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008); *see also Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1186 (E.D. Cal. 2016) (taking judicial notice of CBAs where necessary to resolve issues of preemption). The court will therefore take judicial notice of the CBA.

> federal preemption under § 301 "is an essential component of federal labor policy" for three reasons. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917–18 (9th Cir. 2018) (*en banc*). First, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government." *Id.* at 918 (internal quotation marks and citations omitted). Thus, a CBA is part of the "continuous collective bargaining process." *United Steelworkers v. Enter. Wheel & Car Corp.* (*Steelworkers III*), 363 U.S. 593, 596 (1960). Second, because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it "calls into being a new common law—the common law of a particular industry or of a particular plant." *United Steelworkers v. Warrior & Gulf Navigation Co.* (*Steelworkers II*), 363 U.S. 574, 579 (1960). Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the "'parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment." *Id.* at 582. Third, grievance and arbitration procedures "provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process." *Schurke*, 898 F.3d at 918 (internal quotation marks and citation omitted).

*Id.* at 1152.

The determination of whether a claim is preempted by § 301 is made by way of a two-step inquiry. The first question is "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law," or if instead the right is conferred by a CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If it is conferred solely by the CBA, the claim is preempted. *Id.* If not, courts proceed to the second step and ask whether the right is "nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Once preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393; *see also Diaz v. Sun-Maid Growers of Cal.*, No. 1:19-cv-00149-LJO-SKO, 2019 WL 1785660, at *7–8 (E.D. Cal. Apr. 24, 2019) (denying plaintiff's motion to remand after determining that plaintiff's overtime claim was preempted by § 301).

Below, the court will engage in the two-step *Burnside* inquiry as to each of plaintiff's five causes of action.

/////

5

1. Plaintiff's FEHA Claims

Plaintiff's first three causes of action—disability discrimination, failure to accommodate disability, and failure to engage in good faith interactive process—allege unlawful employment practices in violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940. (*See* Compl. at ¶¶ 23–51.)

Plaintiff's FEHA claims survive the first step of the *Burnside* analysis because the rights that plaintiff seeks to vindicate through each of his causes of action are not created by the CBA. The Ninth Circuit has held "that FEHA employment discrimination claims are not *ipso facto* preempted by § 301 of the LMRA." *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007). FEHA "confers upon employees certain rights not to be discriminated against because of physical handicap or medical condition. That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (internal citations omitted).

With regards to step two of the *Burnside* analysis,

> "interpretation" is construed narrowly in this context. At this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms. Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA.

*Curtis*, 913 F.3d at 1153 (internal quotation marks and citations omitted).

Here, plaintiff's FEHA claims do not require an interpretation of the CBA's terms. Although non-discrimination is addressed in the CBA, this does not restrain plaintiff from exercising his legal rights under state law. *See Ackerman*, 860 F.2d at 1517 (finding that a CBA's general prohibition against discrimination did not render plaintiff's state law claim "'inextricably intertwined' with the grievance and arbitration procedure" of the CBA, because "the state law claim [could] be resolved without interpreting the agreement"). Indeed, the CBA at issue here explicitly provides that it will not restrain a member of the bargaining unit from exercising their legal rights with respect to prohibiting discrimination under state law. (Doc. No. 5 at 9.) Thus, the court concludes that § 301 of the LMRA does not preempt plaintiff's first three causes of action.

6

2.      Plaintiff's Invasion of Privacy Claim

Next, in his fourth cause of action plaintiff alleges that defendants violated his right to privacy by requiring him to take a post-employment drug test as a condition of continued employment. (Compl. at ¶¶ 52–61.) Turning to the first step of the *Burnside* test, the court notes that the California Constitution specifically guarantees the right of privacy. Cal. Const., art. I, § 1; *American Academy of Pediatrics v. Lungren*, 16 Cal. 4th 307, 326 (1997). Plaintiff's privacy claim therefore survives the step one inquiry. *See Williams v. Winco Holdings, Inc.*, No. 1:16-cv-00508-DAD-SAB, 2016 WL 3648967, at *5 (E.D. Cal. July 7, 2016) ("Applying the first step of the analysis set out by the court in *Burnside*, it appears clear that the basis of plaintiff's claim is not the CBA, but rather is grounded in the California Constitution's guarantee of the right to privacy.").

At step two of the *Burnside* analysis, "[w]here a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the CBA must include 'clear and unmistakable' language waiving the covered employees' state right 'for a court even to consider whether it could be given effect.'" *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692 (9th Cir. 2001), as amended (Aug. 27, 2001) (citation omitted). "[A] court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption." *Id.*

Here, plaintiff argues that his claim is not preempted because there is no "clear and unmistakable" language in the CBA waiving his right to not be subjected to drug testing "without individualized suspicion unless the employee is in a safety or security-sensitive position." (Doc. No. 5 at 10.) The crux of plaintiff's argument focuses on one of two scenarios under which the CBA contemplates drug testing.[3] Paragraph 68 of the CBA provides that

---

[3] Plaintiff notes that one of those scenarios contemplates drug testing "when 'an employee is acting in an abnormal manner and the Employer has "probable suspicion" to believe that the employee is under the influence of controlled substances and/or alcohol.'" (Doc. No. 5 at 10.) Plaintiff argues that this scenario does not apply here because defendants did not have probable suspicion to believe he was under the influence of controlled substances and/or alcohol. (*Id.*) Defendants do not contend that they screened plaintiff for drugs on the basis of probable suspicion, and thus the court finds it to be undisputed that this scenario does not apply.

7

> Leaves of absence may be obtained from the Employer for a period not to exceed twelve (12) months for illness or physical incapacity, and for a period not to exceed sixty (60) days for valid personal reasons. . . . After absence from work for any reason for sixty (60) or more days, the Employer may require the returning employee to submit to a physical examination and/or a drug/alcohol test.

(Doc. No. 1-2 at 8.) Plaintiff argues that this last "sentence should be read in the context and scope of the paragraph in which it appears," and "[t]he paragraph clearly only addresses leaves of absence for illness, physical incapacity, or valid personal reasons." (Doc. No. 5 at 12.) Plaintiff contends that his absence was instead a voluntary layoff pursuant to paragraph 69, titled "Voluntary Reduction in Work Force." (*Id.* at 11.) According to plaintiff, "absent a leave in excess of sixty days due to illness, physical incapacity, or valid personal reasons, there is no 'clear and unmistakable' language in the CBA that waives Plaintiff's state law privacy rights." (*Id.*)

In opposition, defendants contend that the language appearing in paragraph 68 of the CBA "adequately apprised employees who were absent for more than 60 days—including on voluntary layoff—that they would be required to submit to a mandatory drug/alcohol test upon returning to work." (Doc. No. 6 at 9.) Defendants further argue that:

> Plaintiff concedes the potential application of Section 21 of the CBA, including Paragraphs 68–69: "Though not alleged in the Complaint, Plaintiff acknowledges for the purpose of this motion that [Plaintiff's] layoff was ostensibly "voluntary" and therefore, at least arguably, subject to the CBA's voluntary reduction in work force language." Yet, in the same breath, Plaintiff goes on to argue why the Court should not adopt Defendants' interpretation. At one point, Plaintiff—applying a contorted interpretation which ignores the plain language of the CBA—states that a particular "sentence, however, should not be read in isolation" and that it should be read only "in the context of and scope of the paragraph in which it appears, and the CBA as a whole." **Plaintiff's statements lead to the inescapable conclusion that interpretation of the CBA is absolutely necessary to parse Plaintiff's claims.**

(*Id.* at 10) (internal citations omitted) (emphasis added). Plaintiff has not replied to defendants' argument in this regard. (*See* Doc. No. 7.)

The court notes that paragraph 68's provision specifically stating that drug testing of an employee may be required after absences from work "for any reason for sixty (60) or more days"

is a "clear and unmistakable waiver" of the right to privacy that plaintiff asserts in his complaint. Paragraph 68 of the CBA provides adequate notice that any employee returning from an absence of over sixty days for any reason may be required to submit to a drug test. Plaintiff opposes this reading of paragraph 68, relying upon this court's decision in *Williams v. Winco Holdings, Inc.* However, that case is distinguishable. The random drug screening policy at issue in *Williams* expressly listed the six categories of employees to which the policy applied, and the plaintiff in that case was not employed in any of those categories of employees. *See Williams*, 2016 WL 3648967, at *5–6. Here, paragraph 68 of the CBA applies to all employees broadly, as well as to employee absences for *any* reason of sixty days or more. Here, it is clear that plaintiff was put on notice by the CBA of the possibility of being required to submit to drug screening upon returning from his absence.

Even if plaintiff had not waived his right to privacy, the court would still be required to interpret the CBA to resolve this claim. It cannot be said that plaintiff's violation of his right to privacy claim is based "on the protections afforded [him] by California state law, *without any reference to expectations or duties created by the CBA.*" *Cramer*, 255 F.3d at 693–94 (emphasis added). As defendants have argued, assessment of plaintiff's argument that paragraph 68 of the CBA applies only to leaves of absence for illness, physical incapacity, or personal reasons would require interpretation of the CBA. Thus, the appropriateness of defendants' conduct towards plaintiff is defined by the CBA. *See Williams*, 2016 WL 3648967, at *5 n.3 ("If the appropriateness of the employer's conduct towards its employee is defined by the CBA, then plaintiff's state law claim is preempted by the LMRA."); *Gilliland v. Safeway Inc.*, No. 2:08-cv-01134-MCE-CMK, 2008 WL 11267817, at *3 (E.D. Cal. October 10, 2008). Accordingly, the undersigned concludes that plaintiff's invasion of privacy cause of action is preempted by § 301 of the LMRA.

3. <u>Plaintiff's Wrongful Discharge in Violation of Public Policy Claim</u>

Plaintiff's fifth and final cause of action alleges wrongful discharge in violation of the public policy against disability discrimination and the public policy against unwarranted intrusion on the right to privacy. (Compl. at ¶¶ 62–69.) A wrongful discharge in violation of public policy

9

claim is preempted "if it is not based on any genuine state public policy, or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1002 (9th Cir. 1987) (finding that plaintiff's wrongful termination claim was preempted because she "fail[ed] to identify any state statute or other relevant public policy of California protecting opposition to IRS tax audits."). "Otherwise, virtually any wrongful discharge claim could be recast as a public policy claim exempt from preemption." *Id.*

If plaintiff's claim were based solely on violations of the public policy against disability discrimination, it would survive the *Burnside* analysis. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343 (9th Cir. 1996) ("It is state, not federal, law that creates the cause of action for wrongful discharge in violation of public policy."); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238 (9th Cir. 1990) ("There is no doubt that [FEHA] establishes a California public policy against [disability] discrimination in the workplace. Nor would enforcement of the California statute require interpretation of the CBA."). Defendants argue that adjudicating plaintiff's wrongful discharge claim in violation of the public policy against disability discrimination requires a determination of whether plaintiff's methadone use constituted "misuse" of a prescription drug under the CBA's "Drug and Alcohol Testing Program." (Doc. No. 6 at 12; *see also* Doc. No. 1-2 at 18.) According to the declaration of Michael Donich, the Wine Group LLC's Vice President of Valley Operations, (1) plaintiff admitted he did not have a prescription for methadone and instead took a friend's pill, and (2) that the note submitted by plaintiff to his employer did not state that his physician prescribed methadone for his use. (Doc. No. 6-1 at ¶ 4.) The court is not persuaded by these arguments, however, because a determination as to whether plaintiff misused prescription drugs is a factual inquiry that would not "raise questions about the scope, meaning, or application" of the CBA's "Drug and Alcohol Testing Program." *See Curtis*, 913 F.3d at 1153.

Nevertheless, plaintiff's wrongful discharge in violation of public policy claim is preempted because it cannot be resolved without reference to the expectations of privacy set forth in the CBA pertaining to leaves of absence and post-employment drug screening. *See Cramer*, 255 F.3d at 693–94. It is true that plaintiff's wrongful discharge claim is based on public policies

10

set forth in the California Constitution, and thus would survive step one of the *Burnside* analysis. *See Semore v. Pool*, 217 Cal. App. 3d 1087, 1097 (1990) ("We think, however, that there is a public policy concern in an individual's right to privacy. Plaintiff's right not to participate in the drug test is a right he shares with all other employees. In asserting the right, he gives it life."). But as discussed above, here plaintiff waived his right to privacy by way of the CBA. *See Winco Holdings, Inc.*, 2016 WL 3648967 at *5 (finding that plaintiff's wrongful termination in violation of the public policy based on the right to privacy was not preempted because "there [wa]s no 'clear and unmistakable' waiver" and thus "plaintiff's claim [wa]s not 'substantially dependent' on the terms of a CBA'"). The court must look to the CBA in order to determine whether the public policy based on the right to privacy was in fact violated. *Gilliland v. Safeway Inc.*, No. 2:08-cv-01134-MCE-CMK, 2008 WL 11267817, at *4 (E.D. Cal. Oct. 10, 2008) ("However, whether Defendant violated this public policy is unclear because Plaintiff consented to drug testing under some circumstances through the CBA. In order to determine if the Defendant wrongfully terminated Plaintiff in violation of her right to privacy, the Court must analyze The Reasonable Suspicion Policy and the 'just cause' provisions of the CBA.").

For these reasons the court concludes that plaintiff's wrongful discharge in violation of public policy claim is preempted by § 301 of the LMRA. *See id.*

**B.      Supplemental Jurisdiction**

Having found that federal question jurisdiction lies in this court by virtue of preemption under § 301 of the LMRA with respect to plaintiff's invasion of privacy and wrongful discharge in violation of public policy claims, the court next considers whether it may exercise supplemental jurisdiction over plaintiff's FEHA claims. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that to exercise supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact").

All of plaintiff's remaining causes of action allege similar unlawful employment practices in violation of the FEHA. Even more significantly, all of plaintiff's claims appear to arise out of the same employment relationship that gives rise to plaintiff's wrongful discharge claim.

Declining to exercise supplemental jurisdiction over plaintiff's state law claims under these circumstances could result in parallel proceedings regarding the same nucleus of operative facts, one in state court and the other in federal court. Such an outcome would inconvenience the parties, unnecessarily expend scarce judicial resources, and create the potential for inconsistent judgments. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Kinder v Citibank*, No. 99-cv-2500-W-JAH, 2000 WL 1409762, at *4 (S.D. Cal. Sept. 14, 2000) (requiring the parties to maintain separate suits in state and federal court would "undermine the purposes of supplemental jurisdiction"). The court will therefore exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over plaintiff's state law causes of action brought in this case that are not subject to preemption under § 301 of the LMRA.

## CONCLUSION

For the reasons explained above:

1. Plaintiff's motion for remand (Doc. No. 5) is denied; and
2. This action is referred to the assigned magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: **November 3, 2020**

_____
UNITED STATES DISTRICT JUDGE